(No. 85-CC-0595-

Rose Turner, Claimant, *v.* The State of Illinois, Respondent.

*Opinion filed November 25, 1985.*

Roxy M. Schumann, for Claimant.

Neil F. Hartigan, Attorney General (William E. Webber, Assistant Attorney General, of counsel), for Respondent.

PATCHETT, J.

This cause came on for hearing April 23, 1985, before Richard Parsons, one of the commissioners of this Court. Claimant, Rose Turner, appeared personally and was represented by counsel, Roxy M. Schumann. Respondent, the State of Illinois, Galesburg Mental Health Center, was represented by William Webber, assistant Attorney General. Certain stipulations and evidence were presented, and testimony adduced. Arguments were heard, and the commissioner was fully advised in the premises.

The Court having considered all the evidence and pleadings in this case, and having considered the commissioner's report, makes the following findings:

I. That the parties entered into the following stipulations:

1. That the findings, decision and order of the Illinois Human Rights Commission entered on June 29, 1984, is undisputed except with regard to damages as hereinafter provided.

2. That the Claimant was terminated by the Respondent on October 10, 1980, and Respondent was ordered to reinstate Claimant immediately. Claimant was reinstated on August 16, 1984.

3. That the relevant period for calculating damages is from October 10, 1980, up to and including August 15, 1984, and said period is divided into two periods defined as follows: First period—October 10, 1980, up to and including June 30, 1983. Second period—July 1, 1983, up to and including August 15, 1984.

4. With respect to damages, the calculations for back salary and back payment regarding personal days and vacation are as follows:

| Fiscal Year | Salary | Personal Days | *First Period* Vacation | Total by Year | Sub-Total (FY '81, '82, '83) |
|---|---|---|---|---|---|
| 1981 | 9,404.84 | 88.74 | 334.43 | 9,828.01 | |
| 1982 | 14,376.20 | 149.10 | 498.98 | 15,024.28 | |
| 1983 | 16,103.06 | 167.46 | 560.17 | 16,830.69 | |
| | 39,884.10 | 405.30 | 1,393.58 | 41,682.98 | 41,682.98 |
| | | | *Second Period* | | |
| 1984 | 16,904.05 | 173.38 | 585.16 | 17,662.59 | |
| 1985 | 2,271.30 | 32.30 | 96.90 | 2,400.50 | |
| | 19,175.35 | 205.68 | 682.06 | 20,063.09 | 20,063.09 |
| | | | | Grand Total | 61,746.07 |

5. That in September 1984, the Claimant received payment for the second period covering July 1, 1983, up to and including August 15, 1984, in the amount of $20,063.09 plus contribution to the State Retirement System.

6. That the amount originally claimed is for the first period which is from October 10, 1980, up to and including June 30, 1983, which is $41,682.98.

7. That the only issues before this Court are entitlement and mitigation of damages, and more particularly are as follows:

a) Whether or not Claimant is entitled to payment for personal days and vacation during the relevant period.

b) Whether or not the Claimant mitigated her damages.

II. During the course of the hearing, judicial notice was taken with regard to the population of Galesburg, Illinois, as well as the unemployment problem in Galesburg, Illinois, Knox County, as well as Peoria County.

III. During the course of the hearing, testimony was adduced from two witnesses, Rose M. Turner, Claimant, and David Michael Taylor, from the Department of Public Aid, State of Illinois. A synopsis of their respective testimony is as follows:

Testimony of Rose M. Turner:

Claimant testified that she resides in Galesburg, Illinois (T-10), along with her husband and family where they are purchasing a home (T-23).

Claimant was employed at the Galesburg Mental Health Center in Galesburg, Illinois, until October 10, 1980, when she was terminated (T-10). On August 16, 1984, Claimant returned to work pursuant to an order of reinstatement from the Illinois Human Rights Commission (T-10), complaint exhibit A.

Claimant has been a licensed practical nurse (LPN) in the State of Illinois since 1973 (T-11). Her license remained active from October 1980, up to and including August 15, 1984 (T-11).

Between the period of October 10, 1980, up to and including August 15, 1984, Claimant actively sought employment (T-11 through 24). She sought employment in the medical field as an LPN by placing an ad in the local newspaper (T-11). She also contacted, applied and made several inquiries for employment at Cottage Hospital and St. Mary's Hospital, both of which are the only remaining hospitals in Galesburg, Illinois (T-11 through 15). She even contacted, applied and made several inquiries with Homemakers Upjohn Agency, Methodist Hospital and St. Francis Hospital located in Peoria, Illinois (T-15). Although she contacted these medical facilities, sometimes up to two to three times per week, she was never hired.

Claimant sought employment in nonmedical related fields, including receptionist positions (T-18), bank teller positions (T-19), and telephone operator positions (T-19). After a year of job hunting to no avail, Claimant reorganized the NAACP in Galesburg (T-20 through 21 and T-28). She would go around to various businesses in Galesburg, Illinois, and talk to them about employing herself as well as others (T-22). She went to local banks, grocery stores, insurance companies, City Hall and the courthouse, but was never able to obtain employment (T-22 through 23). It is Claimant's belief that she was not hired because she was fired by the Respondent and she had filed a charge of discrimination against the Respondent (T-24). In addition, Claimant believes that her attempts to find work through the NAACP resulted in her being labeled as a troublemaker (T-24).

During the relevant period, Claimant did not receive any unemployment compensation (T-33). However, Claimant did receive public aid payments on behalf of her son, Corey Edgerson, for the benefit of Jason Edgerson, Corey's son (T-34 and T-38) when Jason was left at Claimant's doorstep (T-34). The public aid payments consisted of a grant payment which was given to Corey to purchase diapers, formula and clothing for Jason (T-39), and food stamps which were used to purchase food (T-39). Claimant was advised by someone at the public aid office that she should be the grantee since Corey was still a minor (T-39). Corey Edgerson was 17 years of age at the time (T-38).

Testimony of David Michael Taylor:

Mr. Taylor testified that he is a data processing analyst for the Department of Public Aid for the State of Illinois, and as such is responsible for the recipient legislative system (T-43).

During the period October 10, 1980, up to and including June 30, 1983, Claimant received grant assistance payments in the amount of $3,407.91 (T-45), energy payments in the amount of $200.00 (T-45), food stamps in the amount of $3,238.00 (T-46), and medical payments in the amount of $52.94 (T-46). During the period of July 1, 1983, through August 15, 1984, Claimant received food stamps in the amount of $1,642.00 (T-48).

Pursuant to the Illinois Public Aid Code, parents are responsible for their children, but grandparents are not responsible for their grandchildren. Therefore, the grandparents' income is not considered. If grandparents choose not to support the grandchild with their own finances, the grandparent could legitimately receive the full public aid assistance grant, food stamps and medical payments (T-52 through 53).

It has generally been the policy of the Illinois Department of Public Aid not to necessarily allow minor grantees, but to have an adult that would be the actual payee (T-54).

IV. Amended Claim

That during the course of the proceedings, the Claimant voluntarily remitted the following amounts:

| | |
|---|---|
| As and for medical payments | $ 52.94 |
| As and for vacation time | 2,075.64 |
| As and for personal days | 610.98 |
| Total | $2,739.56 |

Claimant made an oral motion to amend her claim in the above entitled cause, reducing the original claim of $41,682.92 by $2,739.56, resulting in her amended claim being in the amount of $38,943.42. Claimant's oral

motion, without objection, was allowed by the commissioner.

## V. Findings

After reviewing the complaint filed herein, including exhibit A attached thereto, and considering the stipulations entered into in this case, and considering the evidence and testimony as adduced at the hearing, and the ruling upon the Claimant's oral motion to amend her claim, we make the following findings:

1. That Claimant was employed by the Respondent as an LPN and was terminated by Respondent on October 10, 1980.

2. That Claimant filed a charge of employment discrimination based upon race against the Respondent on October 27, 1980, with the Illinois Department of Human Rights.

3. That the Illinois Department of Human Rights completed its investigation and issued a notice of substantial evidence on October 11, 1981.

4. That a complaint for civil rights violations was filed on behalf of the Claimant by the Illinois Department of Human Rights before the Illinois Human Rights Commission on May 11, 1982.

5. That a hearing on the merits was held on October 19 and October 20, 1982, before an administrative law judge who subsequent thereto entered a proposed order on March 19, 1984, ruling in favor of the Claimant and against the Respondent.

6. A final order was entered by the Illinois Human Rights Commission sustaining Claimant's charge of employment discrimination based upon race, resulting in the Respondent being ordered to return Claimant to

work and to pay her back pay and any other benefits lost during the interim.

7. That Claimant returned to work on August 16, 1984.

8. That the relevant period for purposes of calculating damages is between October 10, 1980, up to and including August 15, 1984, which, for purposes of work benefits, has been divided into two periods which are as follows: 10/10/80 through 6/30/83, and 7/1/83 through 8/15/84.

9. In regard to the first period, the damage award in the amount of $41,682.98 lapsed back to the State treasury causing Claimant to file her complaint before the Court of Claims.

10. In regard to the second period, the damage award in the amount of $20,063.09 was paid to Claimant in September 1984.

11. Claimant is a licensed practical nurse (LPN) and has been so licensed since 1973 in the State of Illinois. Claimant's LPN license was active in 1980 and continually active through August 15, 1984.

12. That during the period of October 10, 1980, up to and including August 15, 1984, Claimant sought employment by making several contacts, including filing applications, personal interviews and follow-up inquiries and placed ads in the local newspaper for private nurse duty work in the medical field to the following: Cottage Hospital, Galesburg, Illinois; St. Mary's Hospital, Galesburg, Illinois; Homemakers Upjohn Agency, Peoria, Illinois; St. Francis Hospital, Peoria, Illinois; and Methodist Hospital, Peoria, Illinois.

13. That Galesburg, Illinois, has only three hospitals

as follows: Cottage Hospital, St. Mary's Hospital, and Galesburg Mental Health Center (Respondent).

14. That Claimant also sought employment in nonmedical fields by answering newspaper ads, filling out applications, personal interviews and follow-up inquiries for the following types of positions: receptionist, bank teller and telephone operator.

15. That Claimant tried to find employment for one year unsuccessfully. That Claimant continued to seek employment in different fields, even other than those she was qualified in or trained in, and that out of frustration she reorganized the NAACP in Galesburg, Illinois, and continued not only to seek a job for herself, but for others. Claimant made several inquiries regarding job openings and actively sought to be employed in the local banks, grocery stores, insurance companies, City Hall and the courthouse.

16. Claimant is married and has resided in Galesburg, Illinois, for 29 years where she and her husband are purchasing a house.

17. Claimant did not receive any unemployment compensation during the relevant period.

18. That during the relevant period, Claimant's minor son, Corey Edgerson, age 17, was residing with the Claimant. During said period, Corey's minor son, Jason Edgerson, was left at Claimant's residence. Corey Edgerson applied for public aid, but because Corey was a minor himself, the Department of Public Aid advised Corey that the payments would have to go through Claimant. When the public aid payments were received, the money was given to Corey to provide for Jason's needs.

19. Corey Edgerson through Claimant received food stamps which were used to purchase food for Jason Edgerson.

20. During the first relevant period, Claimant received $3,407.91 as and for grant assistance; $200.00 as and for energy type assistance; $3,238.00 as and for food stamps on behalf of Corey Edgerson for Jason Edgerson, the Claimant's grandchild.

21. During the first relevant period, Claimant received $52.94 as and for medical payments.

22. During the second relevant period, Claimant received food stamps in the amount of $1,642.00 on behalf of Corey Edgerson for Jason Edgerson, Claimant's grandchild.

23. Pursuant to the Illinois Public Aid Code for the State of Illinois, parents and grandparents are treated differently. Parents are responsible for their children, grandparents are not responsible for their grandchildren. Therefore, parents may receive public aid assistance depending on the amount of money earned, the number of hours worked and the amount of money actually paid. However, with grandparents, if they choose not to support the grandchild with their own finances, they may legitimately receive the full public aid assistance grant, food stamps and medical payments, without considering the grandparents' income.

24. That the Claimant has diligently sought employment and has done all in her power to mitigate her damages pursuant to the standard set out in *Sullivan v. State* (1967), 26 Ill. Ct. Cl. 117.

25. That as a result of the voluntary remittitur and oral motion to amend claim which was granted, the issue

of entitlement of payment for personal days and vacation is moot.

Therefore, we make the following ruling:

A. That the findings and final determination of the Illinois Human Rights Commission, case #1981CF0585 be and is hereby adopted pursuant to *Liddell v. State* (1978), 32 Ill. Ct. Cl. 209.

B. We award the Claimant the amount of $38,943.42 plus contribution to the State Retirement System, and the Claimant be and is hereby awarded that sum.

## APPENDIX A

Identification of the State Contributions and Deductions from Back Salary Award

To the State Employees' Retirement System

| | |
|---|---|
| Employee's contribution to State Employees' Retirement System | 1595.36 |
| Employee's contribution to FICA | 2771.93 |
| State's contribution to State Employees' Retirement System | 2345.85 |
| State's contribution to FICA | 2771.93 |

To Illinois State Treasurer to be remitted to Internal Revenue Service:

| | |
|---|---|
| Claimant's Federal income tax | 7788.69 |

To Illinois Department:

| | |
|---|---|
| Claimant's Illinois income tax | 973.59 |

To the Claimant:
    Net salary                                    25813.85

Total award      $44,061.20